**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

JACOB HERNANDEZ,

Petitioner,

v.

DAVID CRIST, Warden, MCF-Stillwater; and MICHAEL HATCH, Attorney General,

Respondents.

Civil No. 01-1686 (JRT/ESS)

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION**

---

Michael C. Davis, LAW OFFICE, 1042 Minnesota Building., 46 East Fourth Street, St. Paul, MN 55101, for petitioner.

Wayne H. Swanson and Nichole J. Carter-Muhvich, OFFICE OF THE POLK COUNTY ATTORNEY, 223 East 7th Street, Suite 101, Crookston, MN 56716, for respondents.

Petitioner Jacob Hernandez ("Hernandez") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is now before the Court on Hernandez's objections to the Report and Recommendation of United States Magistrate Judge E.S. Swearingen dated April 1, 2002. The Magistrate Judge recommended that Hernandez's petition be dismissed with prejudice. This Court has conducted a *de novo* review pursuant to 28 U.S.C. § 636(b)(1)(c) and D. Minn. L.R. 72.1(c)(2). For the reasons set forth below, the Court adopts the Report and Recommendation and dismisses Hernandez's petition.

FILED JAN 24 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. JAN 24 2003
DEPUTY CLERK

## BACKGROUND

Hernandez is in custody of the State of Minnesota, having been convicted by a jury in Polk County District Court of first-degree burglary, third-degree criminal sexual assault, and misdemeanor theft. The Minnesota Court of Appeals affirmed the conviction and sentence on April 13, 1999.[1] Hernandez petitioned the Minnesota Supreme Court for further review, but his petition was denied on June 29, 1999. Hernandez filed a petition for post-conviction relief in the district court on September 22, 2000, and that petition was denied on September 28, 2000. This decision was affirmed by the Minnesota Court of Appeals in July 2001,[2] and the Minnesota Supreme Court refused further review on September 11, 2001. Hernandez filed the present petition for habeas corpus relief on September 13, 2001, alleging that he was denied his rights under the Confrontation Clause of the Sixth Amendment to the U.S. Constitution. Specifically, Hernandez argues that the trial court incorrectly found that his victims were unavailable to testify at trial, and wrongly admitted their statements to police into evidence.

## ANALYSIS

### I. Standard of Review

This Court's power to grant habeas corpus relief to state prisoners is governed by the Antiterrorism and Effective Death Penalty Act of 1996. That statute provides in

[1] *See State v. Hernandez*, No. C9-98-789, 1999 WL 203786 (Minn. Ct. App. April 13, 1999).

[2] *See State v. Hernandez*, No. C2-00-2062, 2001 WL 741570 (Minn. Ct. App. July 3, 2001).

relevant part that this Court may not grant habeas corpus relief to a state prisoner on any issue that was adjudicated on the merits in state court unless the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Hernandez's habeas claims were fully adjudicated on the merits in the Minnesota courts, but he contends that the state Court of Appeals' decision unreasonably applied federal law. Therefore, this Court can grant relief only if it finds that the Minnesota Court of Appeals "identifie[d] the correct governing legal principle from [U.S. Supreme Court] decisions but unreasonably applie[d] that principle to the facts" of Hernandez's case. *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000). An "**unreasonable** application of federal law is different from an **incorrect** application of federal law." *Id.* at 410 (emphasis original).

## II. Objection to Report and Recommendation

Hernandez's petition alleges that his Sixth Amendment right to confront an adverse witness was violated by the trial court's rulings that: (1) the victims were unavailable to testify, and (2) the victims' statements to police were trustworthy and therefore admissible into evidence. The Magistrate Judge found that the state Court of Appeals' decision affirming the trial court was not contrary to clearly established federal law, and was not an unreasonable application of federal law. Hernandez objects to the latter determination only, claiming that the Court of Appeals unreasonably interpreted federal law in holding that the Polk County Attorney made a good faith effort to locate the victims to testify at trial.

To comply with the Sixth Amendment's Confrontation Clause, "the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." *Ohio v. Roberts*, 448 U.S. 56, 65 (1980). *See* Minn. R. Evid. 804(b)(5). *See also Barber v. Page*, 390 U.S. 719, 721 (1968) (explaining why face-to-face confrontation and cross-examination best satisfy the Confrontation Clause). "A good faith attempt to locate and subpoena the witness satisfies the [prosecution's] obligation to demonstrate that the witness is unavailable." *United States v. Flenoid*, 949 F.2d 970, 972 (8th Cir. 1991). *See Roberts*, 448 U.S. at 74-75.

The Minnesota Court of Appeals based its decision upon *Roberts*, finding that the Polk County authorities' efforts to locate the victims sufficiently support the trial court's finding that the victims were unavailable. *See State v. Hernandez*, No. C9-98-789, 1999 WL 203786 at *7 (Minn. Ct. App. June 29, 1999). Hernandez contends that these efforts were not in good faith, and that the trial court therefore erred in ruling that the witnesses were unavailable. Hernandez compares Polk County's efforts to those found by the Sixth Circuit in *United States v. Quinn* to be "singularly unenthusiastic." 901 F.2d 522, 528 (6th Cir. 1999). The Court disagrees.

In *Quinn*, the government sought to locate a witness, but did not issue a subpoena until the Thursday before a Monday trial. *Id.* This gave the U.S. Marshal far less time than usually needed to find the witness. *Id.* On that Thursday, a deputy Marshal did nothing more than pound on the witness's apartment window. *Id.* On Friday, he left a Marshal's sticker on the apartment door, unsuccessfully looked for the manager, and was told by a bystander that the witness had moved one month earlier. *Id.* Nothing was done over the weekend. *Id.* On the night of the first day of trial, a police officer learned that

the witness was in town, at her mother's home. *Id.* The officer drove by the mother's house to see if the witness's car was there, but did not stop or call. *Id.* The next morning, he phoned and was told that the witness was "in and out of the house." *Id.* The officer did not say that he was trying to secure the witness's appearance in court, merely that he was "looking for her." *Id.* at 525.

In this case, the Polk County authorities were far more active. The record shows that Polk County authorities made at least ten separate attempts to locate the victims by making phone calls, sending letters, and seeking help from authorities in Shelby County, Tennessee, the victims' home. *See Hernandez*, 1999 WL 203786 at **7-8 (detailing Polk County's efforts to locate the victims); Rep. & Rec. at 5. These efforts began on August 13, 1997 and continued almost until the trial's scheduled start on October 21, 1997.[3] On October 2, the Polk County Attorney wrote to the Shelby County District Attorney asking for help, and received a response on October 17 stating that Shelby County could not locate the witnesses.[4] *Hernandez*, 1999 WL 203786 at **7-8.

---

[3] Hernandez gives no support for his accusation that the Polk County authorities' "efforts were made several months before petitioner's trial, and the state made no further judicial efforts to locate and procure the attendance of the [v]ictims." (Obj. at 4.) The Minnesota Court of Appeals clearly explained that Polk County authorities made regular attempts to locate the witnesses right up to the original trial date. When the trial was continued until January 1998, Polk County again contacted the Shelby County prosecutor for assistance. *Hernandez*, 1999 WL 203786 at **7-8. On January 2, 1998, the Shelby County District Attorney responded that its investigator had spoken to a landlord, a neighbor, and a friend of the witnesses, and learned that they had moved to another state, and that the authorities could not obtain a forwarding address. *Id.* at *8.

[4] Polk County authorities also contacted the Shelby County sheriff's department, which provided no new information, and made at least two calls to the Shelby County social services department that were never returned. *Hernandez*, 1999 WL 203786 at *7.

The Court finds that these efforts are a far cry from the "unenthusiastic" efforts in *Quinn*. Not only were Polk County authorities more diligent than those in *Quinn*, Polk County had an additional obstacle in trying to locate witnesses who were more than 1,000 miles away in a different state. In *Quinn*, the witnesses were located in the same city as the authorities. *See Quinn*, 901 F.2d at 528. The Court finds the facts here closer to those in *Flenoid*, which Hernandez cites as an example of good faith. In *Flenoid*, the party seeking a missing witness used a credit reporting service to ascertain her most recent address,[5] had U.S. Marshals unsuccessfully try to subpoena her there, "made other attempts" to contact the witness, and "exhausted all other leads concerning her whereabouts." *Flenoid*, 949 F.2d at 971. This Court finds that Polk County's efforts to locate the victims in this case were at least as diligent – and possibly more so – than those in *Flenoid*, and were certainly in good faith.

The Court agrees with the Magistrate Judge that in affirming the trial court's decision to admit the victim's statements, the Minnesota Court of Appeals did not unreasonably apply federal law. Therefore, the Court will overrule Hernandez's objections to the Report and Recommendation, and dismiss his petition for habeas corpus relief under § 2254.

---

[5] Hernandez suggests that use of a credit reporting service in *Flenoid* somehow makes the efforts in that case more diligent. This distinction is without consequence. In *Flenoid*, the attorney seeking to locate witnesses noted that they were "not very rooted people," implying that their addresses were hard to ascertain. *United States v. Flenoid*, 949 F.2d 970, 971 (8th Cir. 1991). In this case, the record shows that the Polk County authorities had no reason, at the outset, to suspect that the victims could not be found at their home address in Tennessee. In fact, the Polk County Attorney was initially able to reach the victims by telephone. *See Hernandez*, 1999 WL 203786 at *7. Thus, the Court finds that Polk County's failure to use a credit reporting service or similar method does not indicate any absence of good faith.

### III. Appealability

The Court determines that Hernandez has not made a "substantial showing of the denial of a constitutional right," as is required under 28 U.S.C. § 2253(c)(2). Moreover, the Court finds it unlikely that some other court would decide the issues raised in Hernandez's motion differently. Therefore, the Court will not grant a certificate of appealability.

## ORDER

Based on the foregoing, the submission of the parties, and all of the files, records, and proceedings herein, the Court **OVERRULES** petitioner's objections [Docket No. 10] and **ADOPTS** the Report and Recommendation of the Magistrate Judge [Docket No. 9]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Petitioner's State Petition for Writ of Habeas Corpus under 28 U.S.C. §2254 [Docket No. 1] is **DISMISSED WITH PREJUDICE**.

2. The Court does not certify the issues raised in defendant's motion for appeal under 28 U.S.C. § 2253(c)(2).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: January 24, 2003
at Minneapolis, Minnesota.

John R. Tunheim
JOHN R. TUNHEIM
United States District Judge